IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRED L. NANCE, JR.,

        Plaintiff,

    v.

NBCUNIVERSAL MEDIA, LLC;
OPEN 4 BUSINESS PRODUCTIONS;
UNIVERSAL TELEVISION LLC;
JOAN PHILO CASTING; EMPIRE
CASTING, LLC, *et al.*,

        Defendants.

Case No. 16-11635

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendants NBCUniversal Media LLC, Open 4 Business Productions, Universal Television LLC, and Joan Philo Casting (together, the "Defendants") move on Rule 12(b)(6) grounds to dismiss eight claims from the Third Amended Complaint brought by Plaintiff Fred L. Nance, Jr. (the "Plaintiff" or "Nance"). Defendants also move to strike several pages of unnumbered paragraphs from the introduction section of the Complaint. For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part and their Motion to Strike is granted in full [ECF No. 68].

## I. BACKGROUND

Plaintiff is an actor who used to work as an extra on the NBC show called *Chicago Med*. Sometime after Nance began working

on set, Defendants allegedly reduced his wages by roughly half; other extras performing the same work did not see any reduction in their paychecks.    In his *pro se* Complaint, Nance also describes a history of workplace bullying which allegedly amounted to various forms of unlawful discrimination.    Here are the pertinent events, as Nance tells them:    While Nance worked on *Chicago Med,* several extras (four or five white women and one white man) began threatening and harassing other extras, though apparently not Plaintiff himself.    This behavior was reported to Defendants, but none of the harassing extras were terminated. In the following weeks, Plaintiff began working on a different show, *Empire,* run on the Fox network.    Plaintiff apparently worked on *Empire* through Defendant Empire Casting, LLC, which does not join this Motion to Dismiss.    On the *Empire* set, Nance had quarrels with some other extras who, with Plaintiff, thereafter returned to work on *Chicago Med*.    When those extras continued to "talk[] about him in a negative way" around the *Chicago Med* set, Nance complained to an assistant director, only to be told that both of the allegedly harassing extras had already submitted complaints about Nance himself.    (3d Am. Compl. ¶ 73, ECF No. 67.)    One extra complained Nance "was telling her how to do her job," and another complained Nance had posted derogatory statements about him on Facebook.    (*Id.* ¶ 77.)

After this incident, many of Defendants' other employees began harassing Nance on set: a project assistant cursed at him and made a rude gesture; a props department employee gruffly told Nance to turn his prop badge around; and the props department also lost his prop badge (Nance suggests intentionally). Nance reported these events, which he describes as "racism and discriminatory practices," to HR. (*Id.* at 36.) In April 2016, Plaintiff filed EEOC charges against NBCUniversal and Joan Philo Casting. On September 24, 2016, he filed an Illinois Department of Labor ("IDOL") wage claim against Defendants (although against exactly which defendants is not clear from the Complaint). Finally, on September 28, 2016, Defendants terminated him, after he allegedly acknowledged to HR investigators that he threatened to push or shove one of the harassing extras. Defendants cited a zero tolerance policy for threatening behavior and told Nance not to return to the set. Nance—who is a black male—then filed this action, asserting a bevy of sex, race, and age-based discrimination claims, many premised upon the allegation that while he was fired for threatening behavior, other extras who exhibited similar behavior escaped punishment.

## II.  DISCUSSION

Defendants move to dismiss Counts II-VI and VIII-X of
Plaintiff's Third Amended Complaint.   This follows successful
efforts by Defendants on two previous Motions to Dismiss, both
of which resulted in Plaintiff amending his Complaint.    The
Court dismissed all complained-of counts last time without
prejudice in light of Plaintiff's *pro se* status, but cautioned
the Plaintiff that his next amendment would be his last.   (Oral
Ruling, November 15, 2017.)   The Court now takes each count in
turn and, for simplicity's sake, orders them by subject rather
than by chronology.

### A.  Title VII Claims

Defendants move to dismiss Plaintiff's six Title VII claims
(Counts II-VI and X).   Until recently, a Title VII claim could
be advanced under a direct or indirect approach.   *See, Lewis v.
City of Chi.,* 496 F.3d 645, 650 (7th Cir. 2007).   But in 2016,
the Seventh Circuit explicitly disapproved of that bifurcation.
*Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 764 (7th Cir. 2016)
("The time has come to jettison these diversions. . . .").
Rather than splinter the evidence into two different categories—
direct and indirect—courts now consider the evidence as a whole
and focus on the key question:  whether the plaintiff would have
suffered the adverse employment action had he not been a member

of a protected class. *Id.* at 763-64. In addition, *Ortiz* made
clear that its holding did not alter the so-called *McDonnell
Douglas* method of establishing a *prima facie* case of
discrimination, *Golla v. Office of Chief Judge of Cook Cty.,
Ill.,* 875 F.3d 404, 407 (7th Cir. 2017) (citing *Ortiz,* 834 F.3d
at 766), which remains a valid but nonexclusive method of doing
so, *Harris v. Chi. Transit Auth.,* No. 14 C 9106, 2017 WL
4224616, at *4 (N.D. Ill. Sept. 22, 2017) (citations omitted).
Under that method, a Title VII plaintiff makes out a *prima facie*
case of retaliation by showing he: (1) engaged in protected
activity; (2) suffered a materially adverse employment action;
(3) was meeting his employer's legitimate expectations; and (4)
was treated less favorably than similarly situated employees who
did not engage in protected activity. *Boss v. Castro,* 816 F.3d
910, 918 (7th Cir. 2016).

### 1. *Disparate Impact or Treatment (Count II)*

In Count II, Plaintiff alleges that Defendants' application
of their zero tolerance policy for threatening violence caused a
disparate impact in violation of Title VII. 42 U.S.C. § 2000e
*et seq.* "Disparate impact claims require no proof of
discriminatory motive and involve employment practices that are
facially neutral in their treatment of different groups but that
in fact fall more harshly on one group than another and cannot

be justified by business necessity." *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 716 (7th Cir. 2012) (citing *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977)). Such claims must be premised upon a harm that falls not on the plaintiff alone, but rather on the protected group of which the plaintiff is a member. *H.P. v. Naperville Cmty. Unit Sch. Dist. #203,* No. 17 C 5377, 2017 WL 5585627, at *5 (N.D. Ill. Nov. 20, 2017) (citations omitted). Here, Plaintiff does not argue that Defendants' alleged "no threats of violence" policy resulted in a disparate impact on black employees generally. Instead, Plaintiff contends that Defendants applied that policy against him—and not the five or six other employees he mentions—because Plaintiff is black and the others are not. The Court thus agrees with Defendants that Plaintiff premises Count III not on a disparate *impact* theory (as he has titled it in his Complaint) but rather on a disparate *treatment* theory. The latter requires that the Plaintiff establish discriminatory motive or intent, *Puffer,* 675 F.3d at 716, which he may do by demonstrating that Defendants' given reason for his termination is pretextual, *Coleman v. Donahoe,* 667 F.3d 835, 841 (7th Cir. 2012). Plaintiff has done as much here. Defendants apparently terminated Plaintiff because he admitted to making a threatening remark to a coworker. But Plaintiff maintains that similarly

situated—but white—employees committed similar transgressions by threatening him, and yet the Defendants tolerated their offenses. This suffices to allege disparate treatment. *See, Mirocha v. Palos Cmty. Hosp.,* 240 F. Supp. 3d 822, 837 n.3 (N.D. Ill. 2017) (quoting *E.E.O.C. v. Francis W. Parker Sch.,* 41 F.3d 1073, 1076 (7th Cir. 1994)) (stating that disparate treatment occurs when an employee is treated less favorably simply because of race, color, sex, national origin, or age); *see also, Green v. Teddie Kossof's Salon & Day Spa,* No. 13 C 6709, 2015 WL 5675463, at *6 n.4 (N.D. Ill. Sept. 24, 2015) (citation omitted) (noting that to prove a disparate treatment claim, terminated plaintiff would have to show that her employer tolerated a similarly situated employee's comparable number of absences). In sum, Plaintiff has not stated a claim for disparate impact, but he has stated a claim for disparate treatment. Defendants' Motion to Dismiss is denied as to Count II to the extent that Plaintiff may pursue his disparate treatment theory.

### *2. Hostile Work Environment (Count III)*

In Count III, Plaintiff alleges he was subject to a hostile work environment based on his race. To state a Title VII hostile work environment claim, Plaintiff must allege: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race or sex; (3) the harassment was sufficiently

severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Nance v. Rothwell,* No. 09 C 7733, 2011 WL 1770306, at *7 (N.D. Ill. May 9, 2011) (citing *Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir. 2004)). In his Complaint, Nance describes workplace personality conflicts, general bullying, and insults exchanged on social media. But Plaintiff fails to allege a connection between this harassment and his race. These allegations "do not conform to the traditional hostile work environment claim in that he does not allege that he was the target of any racial slurs, epithets, or other overtly race-related behavior." *Luckie,* 389 F.3d at 713. Further, Plaintiff adds that the allegedly harassing employees "did not harass any other African American extra on set." (3d. Am. Compl. ¶ 160.) As presented, then, Plaintiff's allegations suggest that his problems at work "were not related to his race—they were related to him. The fact that he is a member of a protected class does not transform them [into an actionable claim for racial harassment]." *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 303 (7th Cir. 2004). Count III is dismissed with prejudice.

### 3. Sex Discrimination (Count IV)

In Count IV, Plaintiff claims Defendants discriminated against him on the basis of his sex in violation of Title VII when they terminated him for threatening behavior but did not terminate female extras who allegedly behaved similarly. In the previous iteration of his Complaint, Plaintiff alleged Defendants discriminated against him "because of his sex and heterosexual orientation." (2d Am. Compl. ¶ 197, ECF No. 43.) Now, Plaintiff recites only the sex basis for this claim. (3d Am. Compl. ¶¶ 161-64.) Under Title VII, it is unlawful to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). But as a male Plaintiff pursuing a sex discrimination claim, Nance faces an additional hurdle in stating a claim: He must demonstrate background circumstances that suggest he is a member of a protected class in this situation. *See, Mills v. Health Care Servs. Corp.,* 171 F.3d 450, 455-457 (7th Cir. 1999). These circumstances can include any "allegations that the particular employer at issue has some inclination or reason to discriminate against the majority [(here, men)] or allegations that indicate that there is something 'fishy' about the facts of the case." *Miller v. Chi. Transit Auth.,* No. 17-CV-00806, 2018 WL 905517,

at *3 (N.D. Ill. Feb. 15, 2018) (quoting *Mills,* 171 F.3d at 455-457) (citation omitted). Considering the allegations as a whole, Nance has failed to make any such showing here. Indeed, one of the six similarly situated offenders he describes is also male. (3d Am. Compl. ¶ 130 n.20.) Plaintiff's sex discrimination claim thus fails. *Cf. Jacobeit v. Rich Twp. High Sch. Dist. 227,* 673 F. Supp. 2d 653, 660 (N.D. Ill. 2009) (finding white plaintiff stated a Title VII race discrimination claim where plaintiff applied to two positions, was hired for and then terminated from one of them, and Defendants extended offers to African American replacements); *Paxson v. Cty. of Cook, Ill.,* No. 02 C 2028, 2002 WL 1968561, at *3 (N.D. Ill. Aug. 23, 2002) (denying motion to dismiss a white plaintiff's Title VII racial discrimination claim where that plaintiff alleged that *all* similarly situation non-white employees received disparate treatment); *see also, Mellinger v. Combined Ins. Co. of Am.,* No. 99 C 4530, 2000 WL 12439, at *2 (N.D. Ill. Jan. 3, 2000) (applying background circumstances analysis to male plaintiff asserting Title VII sex discrimination claim).

### 4. Age Discrimination (Count V)

In Count V, Plaintiff alleges Defendants violated Title VII by terminating him, a man over 40, but not terminating other, sub-40 employees for comparable conduct. As an initial matter,

Plaintiff's claim fails because Title VII protects individuals from discrimination on the basis of race, color, religion, sex, and national origin, but not age. 42 U.S.C. § 2000e-2(a)(1); *Khan v. Univ. of Chi. Hosps.,* No. 96 C 7949, 1997 WL 711421, at *3 (N.D. Ill. Nov. 7, 1997) (granting summary judgment for defendant on plaintiff's age discrimination claim premised on Title VII). Even if Plaintiff had properly brought this claim under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(a)(1), however, the claim still could not survive. Courts apply the *McDonnell Douglas* framework to Title VII claims and ADEA claims alike. *Krchnavy v. Limagrain Genetics Corp.,* 294 F.3d 871, 875 (7th Cir. 2002) (citations omitted); *but, see, Harris,* 2017 WL 4224616, at *4 (remarking that after *Ortiz,* the *McDonnell Douglas* framework is a valid but nonexclusive means of establishing a Title VII claim). To state a claim under this framework, Plaintiff must allege that (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) he was treated differently than a similarly situated person outside the protected class. *Krchnavy,* 294 F.3d at 875 (citations omitted). But the allegations Nance presents neither pass muster under the *McDonnell Douglass* framework nor, per *Ortiz,* establish that

Nance would have kept his job had he been younger.  *See, Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 764 (7th Cir. 2016). Nance alleges that six or seven people "who are not African American and 40 years old" were accused of behavior similar to Plaintiff's fireable offense and yet escaped termination.  (ECF No 67 ¶ 167.)  He adds that generally, younger extras were treated more favorably.  But Nance has also told the Court—twice, now—that at least five of these allegedly similarly situated people are actually *older* than 40.  (3d Am. Compl. ¶ 130 n.20 (describing these five individuals as "white males and females over 40 years old"); 2d Am. Compl. ¶ 24 (describing same).)  At least on this count, Plaintiff has pled himself out of Court.  Taking his allegations as true, Defendants frequently do not terminate employees accused of threatening behavior. Plaintiff is an outlier in that regard, but his allegations preclude him from claiming plausibly that his age is the reason for that difference in treatment.  *See, Mach v. Will Cty. Sheriff,* 580 F.3d 495, 500 (7th Cir. 2009) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009)) ("[A]n ADEA plaintiff must demonstrate that his age was the 'but-for' cause of the challenged employment action."). Count V is dismissed with prejudice.

## 5. *Retaliation Claims (Counts VI and X)*

The Seventh Circuit generally applies the same *prima facie* requirements to retaliation claims brought under Title VII, Section 1981, and the ADEA. *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 403 (7th Cir. 2007) (describing same requirements for Title VII and Section 1981 retaliation claims), *aff'd,* 553 U.S. 442 (2008); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 610 (7th Cir. 2001) (applying same requirements to ADEA retaliation claim).

To establish his retaliation claim, Plaintiff must plausibly allege: (1) he engaged in a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Volling v. Kurtz Paramedic Servs., Inc.,* 840 F.3d 378, 383 (7th Cir. 2016) (citation omitted). A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity. *Boss v. Castro,* 816 F.3d 910, 918 (7th Cir. 2016) (citation omitted).

The first two prongs of that analysis have been met. Plaintiff filed an EEOC complaint in April 2016 alleging race, age, and sex-based discrimination, and Defendants terminated him in September 2016. However, Plaintiff never alleges—or even suggests—a causal link between his Complaint and termination

beyond the mere timing. *Boss,* 816 F.3d at 918. Indeed,
Plaintiff's retaliation claim in Count VI appears to be a
restatement of his disparate treatment claim from Count II.
Once more, he claims Defendants terminated him for conduct that
white extras engaged in without reprimand. These allegations
are sufficient to state a Title VII disparate treatment claim,
but they do not, without more, also establish a claim for
retaliation. Accordingly, Count VII (asserting retaliation
violating Title VII and Section 1981) and Count X (asserting
retaliation violating Title VII and the ADEA) are both dismissed
with prejudice.

### B. Equal Pay Act Claims

#### 1. Unequal Pay (Count VIII)

In Count VIII, Plaintiff asserts Defendants paid him less
than similarly situated females in violation of the Equal Pay
Act, 29 U.S.C. § 206(d). To state a claim for such
discrimination under the EPA, a plaintiff must show: (1) higher
wages were paid to a female employee (2) for equal work
requiring substantially similar skill, effort and
responsibilities, and (3) the work was performed under similar
working conditions. *Jaburek v. Foxx,* 813 F.3d 626, 632 (7th
Cir. 2016) (citations and quotation marks omitted). But such
claims require that plaintiffs allege "a causal relation between

sex and pay." *Lindale v. Tokheim Corp.,* 145 F.3d 953, 957 (7th Cir. 1998). Plaintiff cannot plausibly allege that relation here. In his Second Amended Complaint, Plaintiff told the Court that both male and female extras earned more than he did for substantially similar work. (2d Am. Compl. ¶ 222.) Now that Defendants have moved for and won dismissal of that claim, Plaintiff amends the allegations to state that only females made more than he. This will not do. Plaintiff is correct that generally, an amended complaint supersedes the prior pleading, *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1057 (7th Cir. 1998), and will not be dismissed based on inconsistencies between it and the original, *Whitehouse v. Piazza,* 397 F. Supp. 2d 935, 941 (N.D. Ill. 2005) (citation omitted). But where the amended allegations flatly contradict the originals and there is no suggestion that the originals were made in error, courts have considered the different complaints together in the interests of justice. *See, e.g., Aasen v. DRM, Inc.,* No. 09C50228, 2010 WL 2698296, at *2 (N.D. Ill. July 8, 2010) (dismissing revised allegations reflecting "an intentional manipulation to avoid the consequences of defendants' appropriate motion to dismiss); *cf. Whitehouse v. Piazza,* 397 F. Supp. 2d 935, 942 (N.D. Ill. 2005) (observing that dismissal can be appropriate when pleadings are contradictory, but refusing to

dismiss amended complaint that simply provided facts that the original complaint left out). Here, Plaintiff nowhere suggests that his original pleadings were mistaken. Having seen Defendants' Motions, Plaintiff simply changes his story. The purpose of the pleadings phase is to separate the wheat from the chaff. Plausible claims proceed, but implausible ones perish. Allowing Plaintiff to remold his allegations around Defendants' Motions will only waste the Court's and the parties' time: Such earnest gamesmanship is not in the interests of justice and will not be allowed. Count VIII is dismissed with prejudice.

### 2. *Retaliation Claim (Count IX)*

Defendants contend that Plaintiff's contradictory pleadings also doom his EPA retaliation claim in Count IX. To establish a *prima facie* case for unlawful retaliation under the Equal Pay Act, a plaintiff must plausibly allege three elements: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *Culver v. Gorman & Co.,* 416 F.3d 540, 545 (7th Cir. 2005). Nance's Second Amended Complaint failed to meet these requirements; there he alleged that he filed an IDOL complaint against Empire Casting regarding an "irregular pay schedule." (2d. Am. Compl. ¶ 106.) Clearly, that description makes no mention of sex-based

pay discrimination, so an IDOL complaint asserting that and nothing more fails to qualify as a statutorily protected expression under the EPA. *See, Cole v. Bd. of Trustees of N. Ill. Univ.,* 838 F.3d 888, 901 (7th Cir. 2016) (in retaliation claims, the complaint must indicate discrimination on the basis of membership in a protected class). But in Nance's Third Amended Complaint, he clarifies that he complained to the IDOL regarding an irregular pay schedule as a "result of his sex[, given that] females received their checks regularly." (3d Am. Compl. ¶ 189.) From this, the Court infers Nance means to say that his IDOL complaint asserted that Empire Casting paid him irregularly because he is male. Unlike his earlier allegations, these sufficiently allege engagement in a statutorily protected expression. Further, and contrary to Defendants' contentions, this improved pleading supplements and does not flatly contradict Nance's earlier allegations. As such, the Court will not deviate from the general rule—at least with respect to its analysis of this retaliation claim—that an amended complaint supersedes the prior pleading. *See, Duda,* 133 F.3d at 1057.

As to parts two and three of the *prima facie* case for retaliation: Nance alleges that after he filed the IDOL complaint, the Defendants terminated him a mere four days later. When "an adverse employment action follows on the close heels of

protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case is typically satisfied." *Culver,* 416 F.3d at 546 (quoting *Lalvani v. Cook County, Ill.,* 269 F.3d 785, 790 (7th Cir. 2001)). Nance named only Empire Casting, but not the other Defendants, in his IDOL Complaint. And as stated above, Empire Casting does not join the other Defendants in their instant Motion to Dismiss. The question thus becomes whether the actor who decided, somewhere in Defendants' opaque corporate structure, to terminate Nance knew that Nance had filed the IDOL Complaint. If so, Nance's claim may proceed, if not, it cannot.

Nance alleges that the day after Defendants terminated him, an HR representative of "NBC Entertainment/Universal Television/Universal Cable Productions" (Third Am. Compl. ¶¶ 146, 153) emailed him and explained that Defendants decided to terminate Nance after they learned from Empire Casting's investigation that Nance had threatened to push another extra. The HR rep further explained that based on this evidence, Universal Television notified Empire Casting that Empire must not cast Nance to work on any Universal or Open 4 Business production. Whatever the connection between the movant-Defendants and the abstaining Defendant Empire Casting, it is

clear from these allegations that, at the very least, these entities have an open channel of communications concerning their personnel and operations. At the pleading stage, the Court takes all reasonable inferences in favor of the non-moving party. *Calderon-Ramirez v. McCament,* 877 F.3d 272, 275 (7th Cir. 2017). If Empire shared the results of its HR-employee investigations with the other Defendants, it is reasonable to infer that Empire also shared the news of Nance having filed the IDOL complaint. This ends the analysis—the merits of the IDOL complaint play no role at this early stage. *See, Legutko v. Local 816, Int'l Bhd. of Teamsters,* 606 F. Supp. 352, 359 (E.D.N.Y. 1985) (remarking that at the pleadings stage, retaliation actions are judged "irrespective of the merits" of the underlying claims), *aff'd,* 853 F.2d 1046 (2d Cir. 1988). Plaintiff has stated a retaliation claim under the EPA, so the Motion to Dismiss is denied as to Count IX.

### C. Motion to Strike

Defendants also seek to strike the opening paragraphs to Plaintiff's Third Amended Complaint under Federal Rules of Civil Procedure 12(f) and 10(b). These paragraphs span five pages and range in subject from Plaintiff's purported financial difficulties to a recitation of recent and notorious sexual harassment allegations wholly unrelated to this case (mentions

include actor Kevin Spacey, comedian Louis C.K., and former Senate candidate Roy Moore). First, Defendants are correct that these statements fail to adhere to Rule 10(b), which requires that parties state their claims in numbered paragraphs. *Muller v. Morgan,* No. 12 C 1815, 2013 WL 2422737, at *6 (N.D. Ill. June 3, 2013) (remarking that non-compliance with Rule 10(b) provides reason enough to strike statements from complaint). But more importantly, these introductory statements are immaterial to Plaintiff's claims. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* No. 01-C-8591, 2005 WL 843297, at *13 (N.D. Ill. Jan 20, 2005) (indicating that allegations are immaterial under Rule 12 when they have no essential relationship to the claim), *aff'd,* 541 F.3d 719 (7th Cir. 2008). Plaintiff asserts that his introduction is relevant because these harassment allegations "come under the umbrella of sex discrimination," which is one basis for Nance's action against Defendants. (Pl.'s Resp. at 2, ECF No. 73.) But a complaint is not a dumping ground for all facts relating to the subject matter at hand, and the Court will not permit such detritus to accumulate in the record based on the most tenuous of relationships to Plaintiff's claims. The Motion to Strike is granted, and the unnumbered introductory paragraphs are stricken from the Third Amended Complaint.

In addition, the Court notes that Plaintiff filed two responses to Defendants' Motion to Dismiss which together total forty-one pages. This surpasses the fifteen-page maximum permitted by Local Rule 7.1. Plaintiff is proceeding *pro se* and as such the Court excuses his noncompliance with the Local Rule on this occasion. But Plaintiff is now directed to adhere to the Rule and not file any brief longer than fifteen pages (excluding exhibits) without prior leave of Court. Further noncompliant filings will be subject to being stricken in full.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Counts III, IV, V, VI, VIII, and X are dismissed with prejudice, and Defendants' Motion to Strike is granted in full. Plaintiff may proceed with his disparate treatment claim in Count II and his retaliation claim in Count IX.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/12/2018