IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRED L. NANCE, JR.,

                Plaintiff,

      v.

NBCUNIVERSAL MEDIA, LLC,
*et al.,*

                Defendants.

Case No. 16-11635

Judge Harry D. Leinenweber

### MEMORANDUM OPINION AND ORDER

Plaintiff Fred Nance Jr. ("Nance") alleges that his employers unlawfully discriminated against him on the basis of his age, sex, and race, during his time working as an extra on the television show *Chicago Med*. For the reasons stated herein, Defendant Empire Casting's Motion for Summary Judgment (Dkt. No. 119) is granted. Defendants NBCUniversal Media, LLC, Universal Television LLC, Open 4 Business Productions LLC, and Joan Philo Casting's (collectively, the "Universal Defendants") Motion for Summary Judgment (Dkt. No. 114) is also granted.

## I. BACKGROUND

The Court will first address several procedural issues related to these summary judgment motions before turning to the undisputed facts.

## A. Procedural History

Nance filed this suit in December 2016. After amending his pleadings several times, the Universal Defendants moved to dismiss various counts in Nance's Third Amended Complaint. The Court granted in part and denied in part that motion. *See Nance v. NBCUniversal Media, LLC*, No. 16-11635, 2018 WL 1762440 (N.D. Ill. Apr. 12, 2018). Thus, the entirety of Nance's Third Amended Complaint remains pending against Empire Casting, while only certain claims from the Third Amended Complaint remain pending against the Universal Defendants. The Universal Defendants and Empire Casting have moved separately for summary judgment on the remainder of Nance's claims.

### 1. Nance's Request to Defer Ruling on Motion for Summary Judgment

In his response brief in opposition to summary judgment, Nance invokes Federal Rule of Civil Procedure 56(d) and asks the Court to defer ruling on the motions for summary judgment so that Nance may conduct additional discovery. (*See* Pl.'s Resp. to Summ. J. at 17-18, Dkt. No. 129.) Rule 56(d) states that if the non-movant in a summary judgment proceeding shows by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition, the Court may defer considering the motion or deny it and allow time to take additional discovery. FED. R. CIV. P. 56(d). Nance filed a lengthy

declaration to support his Rule 56(d) and his Statement of Additional Facts. (*See* Nance Decl., Dkt. No. 132.)

However, Nance's request fails both procedurally and substantively. Procedurally, Nance's Rule 56(d) argument is unavailing because he has not made any motion under that rule. The Seventh Circuit has made clear that Rule 56(d) requires a motion. See *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) ("When a party thinks it needs additional discovery in order to oppose a motion for summary judgment . . . Rule 56(f) [now Rule 56(d)] provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary."); *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("When a party is unable to gather the materials required by Rule 56(e), the proper course is to move for a continuance under Rule 56(f) [now Rule 56(d)].")." A Rule 56(d) motion "must state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery and must support those reasons by affidavit." *Deere & Co.*, 462 F.3d at 706. Nance has yet to make a Rule 56(d) motion, which constitutes procedural error. See *Spierer v. Rossman*, No. 1:13-CV-00991, 2014 WL 4908023, at *7 (S.D. Ind. Sept. 30, 2014) (finding that plaintiffs committed procedural error by filing a Rule 56(d) affidavit

contemporaneously with their response to summary judgment, rather than moving for 56(d) relief), *aff'd*, 798 F.3d 502 (7th Cir. 2015).

Furthermore, Nance's request is substantively deficient. Nance's declaration addresses his Rule 56(d) argument only briefly. (*See* Nance Decl. ¶¶ 4-5, 17 ("Plaintiff is requesting more discovery . . . to find out if [Defendants] have any signed, written statements from the primary accusers, Ashland Thomas and Jennyfer Mumfer; and to get a written response from Attorneys Michael Tracy and Mark Trapp[.]") Nance does not explain what facts he seeks to gain from these statements, why they are essential to justify his opposition, or why he was not able to obtain such facts in the allotted discovery period, as Rule 56(d) requires. *See* Fed. R. Civ. P. 56(d); *Deere & Co*, 462 F.3d at 706. Fact discovery in this case was originally open for seven months, a period of time to which Nance stated he had no objection. (*See* 5/3/18 Status Hr'g Tr.) When Nance requested an extension to pursue additional discovery after discovery closed, the Court granted it. (*See* 1/9/19 Minute Order, Dkt. No. 105.) Nance's declaration now alludes to new documents he claims to need. But Rule 56(d) "does not allow a party to block summary judgment simply by offering generalities about the need for further discovery." *Staten v. Nissan N. Am., Inc.,* 134 F. App'x 963,

964-65 (7th Cir. 2005) (citation omitted). Thus, Nance's Rule 56(d) argument fails, and the Court will judge Defendants' summary judgment motions on the record as it stands.

## 2. Nance's Compliance with Local Rules

Both Empire Casting and the Universal Defendants argue in their reply briefs that Nance failed to comply with Local Rule 6.1(b)(3), which states the requirements for responding to a summary judgment movant's statement of undisputed material facts. Empire Casting and the Universal Defendants moved separately for summary judgment, each submitting their own statement of undisputed material facts. (*See* Universal Defs. Stmt. of Facts, Dkt. No. 116; Empire Casting Stmt. of Facts, Dkt. No. 121.) The Universal Defendants' statement of facts contains 52 paragraphs; Empire Casting adopted these 52 paragraphs in its statement of facts and added 16 paragraphs of its own. Nance responded to all 68 paragraphs in his Response to Defendants' Statements of Facts. (*See* Pl.'s Resp. to Defs.' Stmts. of Fact ("DSOF"), Dkt. No. 128.)

Local Rule 56.1 requires the party opposing summary judgment to file a "concise response" to each numbered paragraph in the movant's statement of facts, including, in the case of any disagreement, "specific references to the affidavits, parts of the record, and other materials relied upon." N.D. Ill. L.

R. 56.1(b)(3). Any facts not specifically controverted by the opposing party will be deemed admitted. N.D. Ill. L. R. 56.1(b)(3)(C). Nance responded by agreeing with or admitting that he does not have evidence to controvert 36 of the Defendants' statements. (*See* DSOF ¶¶ 1, 3-4, 6, 8, 10-12, 20-21, 26-27, 31, 34-41, 45, 51, 53-58, 60-61, 63, 65-68.) Nance's responses to the remaining 32 statements are either unresponsive, not supported by citations to admissible record evidence, or otherwise improper. (*See* DSOF ¶¶ 2, 5, 7, 9, 13-19, 22-25, 28-30, 32-33, 42-44, 46-50, 52, 59, 62, 64.) For example, Nance's response to paragraphs 48-50 consists largely of a series of sarcastic questions. (*Id.* ¶¶ 48-50.) At times, Nance supports his denials of Defendants' statements with a citation to his own declaration, but when the Court follows that trail, the cited portion of the declaration consists of a citation to another individual's declaration. (*Id.* ¶¶ 13-14.) Nance often used his responses as an opportunity to argue the facts rather than admit or deny them. (*See, e.g.,* DSOF ¶¶ 9, 30.) Other denials were simply unresponsive to the facts at issue. (*See, e.g., id.* ¶ 5.)

Overall, Nance's references make it difficult for the Court to determine which facts are disputed in this case. Judges are not like pigs, hunting for truffles buried in briefs. *United*

*States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). While courts liberally construe pleadings of individuals who proceed *pro se,* district courts are not obliged to "scour the record looking for factual disputes." *Zoretic v. Darge,* 832 F.3d 639, 641 (7th Cir. 2016) (citation omitted). Thus, a court may require strict compliance with Rule 56.1 even for a *pro se* plaintiff. *Id.* Accordingly, the Court will disregard Plaintiff's response to Defendants' statements of fact and deem the material facts in Defendants' statements admitted. *See id.*; *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *Stoltey v. Brown*, 283 F. App'x 402, 405 (7th Cir. 2008). The Court will rely on Defendants' statements of fact, but as Nance is opposing summary judgment, the Court will view these facts in the light most favorable to Nance. *Stoltey*, 283 F. App'x at 405.

Additionally, Empire Casting notes that Nance's response brief is 33 pages long, in excess of Local Rule 7.1's 15-page limitation for such a brief. *See* N.D. Ill. L. R. 7.1. Empire Casting asks the Court to strike Nance's response brief because he failed to seek prior approval from the Court to file his excessive brief pages. Moreover, Empire Casting stresses that Nance's brief often veers off-topic from the dispute at hand, does not clearly identify which undisputed facts he relies on, and thus is difficult to parse for plausible legal arguments.

However, given Nance's *pro se* status, the Court declines to strike his brief. The Court turns to the facts of the case as set forth in the Defendants' Statements of Fact.

## B. Facts

This case concerns Nance's allegations of employment discrimination during his time as a background actor, or "extra," on a television series named *Chicago Med*. Nance contends that Defendants treated him differently than white and female extras when the Universal Defendants instructed Empire Casting to stop casting Nance as an extra on *Chicago Med* after an internal investigation concluded that Nance threatened another extra while vying for screen time.

Nance is a 69-year-old African-American resident of Illinois. (Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 3, 53 ("DSOF"), Dkt. No. 128.) NBCUniversal is a media company headquartered in New York, New York. (DSOF ¶ 1.) Open 4 Business Productions and Universal Television are wholly-owned subsidiaries of NBC Universal. (*Id.*) Empire Casting is a company that casts extras on various film and television productions. (*Id.* ¶ 54.) Joan Philo is an Illinois resident who worked first for Universal Television, and then for Empire Casting, as a Casting Director. (*Id.* ¶ 2.)

Universal Studios produces the television show *Chicago Med,* a drama set in a fictional hospital in Chicago. (DSOF ¶¶ 5-6.) In September of 2015, Joan Philo offered Nance a role as an extra playing an Emergency Room ("ER") doctor in Season One of *Chicago Med*. (*Id.* ¶ 8.) Nance was considered a "core" extra, meaning he would appear in multiple episodes of *Chicago Med*, rather than being hired to appear in a single scene. (*Id.* ¶ 10.) Universal Television employed Nance throughout Season One of *Chicago Med*. (DSOF ¶ 11.)

Nance began to experience conflict on the *Chicago Med* set. Other extras made comments to Nance suggesting that they resented the amount of screen time Nance received. (DSOF ¶ 16.) At times, Nance confronted other extras when he felt they were acting inappropriately or unprofessionally on set. (*Id.* ¶ 15.) On or about February 22, 2016, Nance approached *Chicago Med*'s Assistant Director Patrick Priest and told him that he wished to "file charges" of harassment against *Chicago Med* extras Christie Tate and Donny Williams. (DSOF ¶ 20.) Priest informed Nance that Tate and Williams had already accused Nance of harassment. (*Id.* ¶ 20.) Nance then prepared a packet of materials that he gave to Priest and Philo, containing various pieces of evidence concerning the nature of his relationship with Tate. (*Id.* ¶¶ 21-22.)

Martha Schniepp, a human resources administrator from NBCUniversal, ultimately investigated the issues among Nance, Tate, and Williams. (DSOF ¶ 25.) Apparently, Williams told Nance to stay away from Tate on set, and Williams and another extra, Marcus Funches, made false statements about Nance. (*Id.* ¶ 26.) Tate, Williams, and Funches are African American. (*Id.* ¶ 27.) Nance believed he was being cast less because he complained about Tate and Williams. (*Id.* ¶ 26.) Schniepp concluded that the conduct Nance complained of occurred on the set of a different television show, or in private communications, and that therefore Nance did not violate any Universal Television policy. (DSOF ¶ 28.) Schniepp further concluded that there was no evidence to suggest Nance was cast less frequently after he complained—indeed, he worked more hours on *Chicago Med* season one than any other extra portraying an ER doctor. (*Id.* ¶¶ 28-30.) Around March 18, 2016, NBCUniversal closed the investigation and Schniepp assured Nance that his status with the show remained unchanged. (*Id.* ¶ 31.)

On or about April 26, 2016, Nance filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (DSOF ¶ 33; EEOC Charge, Ex. 15 to Nance Dep., Dkt. No. 117-1.) In the Charge, Nance claimed that NBCUniversal discriminated and retaliated against him on the

basis of his race, color, and sex. He further alleged that NBCUniversal retaliated against him on the basis of his age. (*See* EEOC Charge.)

Around July to August 2016, production of *Chicago Med* season two began, and Nance continued to work as an extra portraying an ER doctor. (DSOF ¶ 35.) At this point, Empire Casting, not Universal Television, employed Nance and his fellow *Chicago Med* extras. (*Id.* ¶¶ 37-38.) On September 24, 2016, Nance filed a complaint with the Illinois Department of Labor ("IDOL") accusing Empire Casting of failing to pay timely all wages owed to him. (DSOF ¶ 39; *see* IDOL Notice of Wage Claim, Ex. 4 to Nance Dep., Dkt. No. 117-1.)

In late September 2016, Ashland Thomas, a white *Chicago Med* extra, complained to a *Chicago Med* production manager that Nance threatened him for obstructing Nance's position in a scene. (DSOF ¶ 42.) Philo began an investigation of Thomas's allegation. (*Id.*) Thomas alleged that Nance threatened him not to block Nance during filming, that if he did, Nance would push Thomas out of the way. (*Id.* ¶ 44.) Another *Chicago Med* extra, Jennifer Mumper ("Mumper"), complained that Nance had pushed her out of the way when she attempted to enter a scene, telling her that she was in "his spot." (DSOF ¶ 47.) Nance denies both Thomas's and Mumper's allegations. (*Id.* ¶¶ 45, 47.)

After hearing the results of Philo's investigation, NBCUniversal executives decided that Nance should no longer be cast as a *Chicago Med* extra. (DSOF ¶ 50.) The executives believed Nance had violated a Universal Television policy prohibiting threats of physical force and intimidating words. (*Id.*) The NBCUniversal executives informed Empire Casting that Nance should not be cast on *Chicago Med* or any other Universal Television production, and on September 28, 2016, Empire Casting terminated Nance. (DSOF ¶¶ 50-51.) After Empire Casting terminated Nance from *Chicago Med,* it hired Nance as an extra on four filming projects from September 30, 2016, to March 28, 2018. (*Id.* ¶ 61.)

Nance filed the instant suit on December 27, 2016, alleging a variety of employment discrimination claims. He has amended his Complaint several times. The Universal Defendants moved to dismiss Nance's Third Amended Complaint. On April 12, 2018, the Court issued a Memorandum Opinion and Order dismissing many of Nance's remaining claims against the Universal Defendants with prejudice. *See Nance*, 2018 WL 1762440. The following claims remain against both the Universal Defendants and Empire Casting: Counts I and VII, alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; Count II, alleging disparate treatment in violation of Title VII; and Count IX,

alleging retaliation in violation of the Equal Pay Act, 29 U.S.C. § 206(d). The following claims remain solely against Empire Casting: Count III, alleging a hostile work environment in violation of Title VII; Count IV, alleging sex discrimination in violation of Title VII; Count V, alleging age discrimination in violation of Title VII; and Counts VI and X, alleging retaliation in violation of Title VII. Defendants now move for summary judgment on all remaining claims.

## II. <u>STANDARD</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment, which requires that he "do more than simply show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004). When considering the Universal

Defendants' and Empire Casting's Motions for Summary Judgment, the Court construes the facts in the light most favorable to Nance. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

### III.  DISCUSSION

The Court will first address the counts pending against both Empire Casting and the Universal Defendants, and then turn to the counts that are pending solely against Empire Casting.

#### A.  Counts Against All Defendants

##### 1.  Counts I and VII: racial discrimination

Count I alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Title VII makes it unlawful for an employer to "discriminate against any individual… because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Nance additionally brings a race discrimination claim under 42 U.S.C. § 1981, in Count VII. However, courts analyze both Title VII and § 1981 claims under Title VII "because the analysis for these two claims is generally the same under either statute." *Alexander v. Casino Queen, Inc.*,

739 F.3d 972, 979 n.2 (7th Cir. 2014) (citation omitted). Thus, the Court will consider them together.

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit refined the approach that district courts must take in evaluating Title VII claims. The court refocused the inquiry on "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. Under this inquiry, "[e]vidence must be considered as a whole" regardless of whether it is "direct" or "indirect" in nature. *Id.* Ultimately, a plaintiff facing summary judgment must produce sufficient evidence that a rational jury could conclude that the employer took the adverse action against the plaintiff because he belongs to a protected class. *Alexander*, 739 F.3d at 979.

It appears that the adverse action at issue is Nance's termination during production of *Chicago Med* season two. (*See* Pl.'s Resp. 8, Dkt. No. 129.) As best the Court can tell, the basis of Nance's legal argument against summary judgment on his race discrimination claim is that the Universal Defendants and Empire treated him differently than similarly situated employees. Nance uses his fellow *Chicago Med* extra Ashland

Thomas, who complained about Nance physically threatening him, as his primary comparator. Nance argues that Thomas "bullied [Nance], [Nance] reported it to Joan Philo, and Joan Philo did not report it. Bullying violates the same policy NBC and Empire Casting report plaintiff violated." (Pl.'s Resp. at 21.) Nance argues that the Defendants "allowed Ashland Thomas to keep his job because he was white and terminated plaintiff who is black for the same NBC et al. and Empire Casting LLC policy." (Pl.'s Resp. at 8.) Nance further claims that "similarly situated extras . . . who are white and females [Ashland Thomas, Stacey Krenning, Jennifer Hemminger, Connie Kincer, and Virginia McEligott] . . . were alleged, on or around September of 2015 through the time of Nance's termination, to have threatened other persons on the Chicago med show with physical force and/or intimidating words but were not disciplined or terminated as plaintiff." (Pl.'s Resp. at 19.)

Thus Nance invokes the *McDonnell Douglas* burden-shifting framework, under which a plaintiff states a *prima facie* case of discrimination by demonstrating four elements: (1) they are members of a protected class; (2) they were meeting their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) at least one similarly situated employee, not in their protected class, was treated more

favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff establishes a *prima facie* case, then "the burden shifts" to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Alexander*, 739 F.3d at 979. If the defendant meets this burden, the burden then returns to the plaintiff to prove, by a preponderance of the evidence, that the proffered reason is a pretext for race discrimination. *Id.*

However, Nance fails to state a *prima facie* claim under *McDonnell Douglas*, because he cannot establish that any of his comparators were indeed similarly situated to him. Nance does not present any evidence that Thomas was ever accused of threatening or "bullying" him. Nor can he point to any evidence in the record that shows the other white extras he names (Krenning, Hemminger, Kincer, and McEligott) threatened people on the *Chicago Med* set but were not disciplined or terminated as Nance was. Furthermore, even assuming that Nance did state a *prima facie* case, the Defendants have set forth a legitimate, nondiscriminatory reason for firing him: that the Universal Defendants' investigation found Nance to have violated NBCUniversal's policy against threats of violence and

intimidating words. And Nance does not offer any evidence to suggest that the proffered reason is mere pretext for race discrimination. Thus, Nance cannot make out a case of Title VII race discrimination under the *McDonnell Douglas* framework.

Viewing the record as a whole, the Court concludes that no reasonable jury could find that Nance was terminated based on his race. The Defendants have set forth substantial evidence that they reasonably relied on the results of NBCUniversal's investigation, which found that Nance threatened another extra while vying for screen time. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 636 (7th Cir. 2009). Accordingly, Defendants are entitled to judgment as a matter of law on Nance's Title VII and § 1981 race discrimination claims.

## 2. Count II: Disparate Treatment

Count II purports to state a claim of disparate impact in violation of Title VII. In its ruling on the Universal Defendants' Motion to Dismiss Nance's Third Amended Complaint, the Court held that Count II fails to state a claim for disparate impact, but does state a claim for disparate treatment, and thus could proceed under the latter theory. Nance's disparate treatment theory is that NBCUniversal applied its "no threats of violence" policy in a disparate manner by terminating Nance, but not white extras who allegedly violated the same policy.

Under Title VII, differential treatment claims, also known as disparate treatment claims, require plaintiffs to prove discriminatory motive or intent. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner (*i.e.*, applied expectations to similarly situated white employees in a more favorable manner), the second and fourth *McDonnell Douglas* prongs merge, allowing the plaintiff to establish a *prima facie* case and proceed to the pretext inquiry. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010) (citing *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007)).

It appears that Nance has abandoned his defense of his disparate treatment theory, as his brief is devoid of any reference to that claim. Regardless, Nance's disparate treatment claim must fail for the same reasons that his Title VII race discrimination claim did. He relies exclusively on presenting similarly situated extras who were not disciplined as he was. However, there is no record evidence that suggests any of the extras he named violated NBCUniversal's legitimate policy. Thus, Defendants are entitled to judgment as a matter of law on Nance's disparate treatment claim is granted.

### 3. Count IX: Retaliation in Violation
### of the Equal Pay Act

Count IX alleges that Defendants retaliated against Nance in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d). To survive summary judgment on an Equal Pay Act retaliation claim, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a but-for causal connection between the protected activity and the materially adverse action. *Heise v. Canon Sols. Am., Inc.*, No. 16C8284, 2018 WL 3533255, at *11 (N.D. Ill. July 23, 2018) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Defendants are entitled to summary judgment on Nance's retaliation claim for two reasons: First, Nance failed to advance any arguments against summary judgment on this claim in his response brief, or even mention the Equal Pay Act. Thus, it appears Nance abandons this claim, as "unsupported and undeveloped arguments are waived." *Culver*, 416 F.3d at 550. Second, even if the Court looks to the arguments Nance made in his Third Amended Complaint in favor of his retaliation claim, there is insufficient evidence to survive a motion for summary judgment. Nance argues in his Complaint that filing his claim with the IDOL constitutes a statutorily protected expression for

purposes of his EPA claim. However, the IDOL claim that Nance
filed solely concerns late or unpaid wages; it makes no mention
of gender-based pay discrimination. The claim provides:

> I have not been paid for the following days [in
> September of 2016] . . . I have inquired and discussed
> with supervisors and other employees of Empire's
> Chicago office the lack of a good payment schedule for
> background/extra actors. Empire's Chicago office
> employees cannot give a response to why
> background/extras have not been paid in a timely
> fashion. . .. Other background/actors working for NBC
> and being paid by their payroll contractor, Empire,
> have been complaining to each other.

(*See* IDOL Claim Application, Ex. Q to Pl.'s Resp. to Defs.'
Statement of Facts, Dkt. No. 131-17.)

Although filing a claim with the IDOL may constitute
statutorily protected activity, the Seventh Circuit has held
that such complaint in the Title VII context must indicate that
the discrimination occurred because of sex, race, national
origin, or some other protected class. *Tomanovich v. City of
Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also Krause
v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001)
(applying same standard to Title VII and Equal Pay Act
retaliation claims). Thus, merely complaining in general terms,
"without indicating a connection to a protected class or
providing facts sufficient to create that inference," is
insufficient. *Tomanovich*, 457 F.3d at 663. Nance urges that by
referring to other extras not being paid, he was implying that

"females received their checks regularly." (Third Am. Compl. at
¶ 189, Dkt. No. 67.) This simply does not follow from the plain
language of Nance's claim. There is no language in Nance's IDOL
claim that indicates he was complaining about being paid
irregularly because he is male; therefore, he has not satisfied
his requirement to show that he was participating in protected
activity. Thus, Defendants are also entitled to summary judgment
on Nance's Equal Pay Act claim. The Court turns to the counts in
the Third Amended Complaint that remain pending solely against
Empire Casting.

### B. Counts Against Empire Casting

#### 1. Count III: Hostile Work Environment in Violation of Title VII

Count III alleges that Empire Casting subjected Nance to a
hostile work environment based on his race. To state a Title VII
hostile work environment claim, Plaintiff must allege: (1) he
was subject to unwelcome harassment; (2) the harassment was based
on his race or sex; (3) the harassment was sufficiently severe
or pervasive so as to alter the conditions of his employment and
create a hostile or abusive atmosphere; and (4) there is a basis
for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708,
713 (7th Cir. 2004).

Again, Defendants are entitled to judgment on this claim
solely for the fact that Nance failed to address it at all in

his response to Defendants' summary judgment motions. *See Culver*, 416 F.3d at 550 ("unsupported and undeveloped arguments are waived"). Even if the Court looks to the arguments Nance made in his Complaint, the claim still fails, for the same reason it failed as against the Universal Defendants on their motion to dismiss. *See Nance*, 2018 WL 1762440, at *3. In his Complaint, Nance describes workplace personality conflicts, general bullying, and insults exchanged on social media. But he fails to allege a connection between this harassment and his race. These allegations "do not conform to the traditional hostile work environment claim in that he does not allege that he was the target of any racial slurs, epithets, or other overtly race-related behavior." *Luckie*, 389 F.3d at 713. Further, Nance adds that the allegedly harassing employees "did not harass any other African American extra on set." (Third Am. Compl. ¶ 160.) Additionally, Nance conceded in his deposition that the harassment principally flowed from Production Assistant Tanner Masseth, and that Masseth was rude to extras of all races equally. (*See* Nance Dep. at 254:23-24 ("It didn't matter what color, because he didn't—he did it to everybody, you know.").)

As presented, then, Plaintiff's allegations suggest that his problems at work "were not related to his race—they were related to him. The fact that he is a member of a protected class

does not transform them [into an actionable claim for racial harassment]." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004). Thus, Empire Casting is entitled to judgment in its favor on Nance's hostile work environment claim.

## 2. Count IV: Sex Discrimination in Violation of Title VII

In Count IV, Nance alleges that Empire Casting discriminated against him on the basis of his sex in violation of Title VII when they terminated him for threatening behavior but did not terminate female extras who allegedly behaved similarly. Under Title VII, it is unlawful to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). This claim fails for the same reason it failed against the Universal Defendants on their motion to dismiss. *See Nance*, 2018 WL 1762440, at *3.

As the Court has already advised Nance, male plaintiffs pursuing a sex discrimination claim face an additional hurdle in stating a claim. *See Nance*, 2018 WL 1762440, at *3. Nance must demonstrate background circumstances that suggest he is a member of a protected class in this situation, as there is a general presumption that employers do not discriminate against "majority employees." *See Mills v. Health Care Servs. Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999) (listing examples of "background

circumstances"). These circumstances can include any allegations that the particular employer at issue has some inclination or reason to discriminate against the majority (here, men) or allegations that indicate that there is something "fishy" about the facts of the case. *See Miller v. Chicago Transit Auth.*, No. 17-CV-00806, 2018 WL 905517, at *3 (N.D. Ill. Feb. 15, 2018) (citing *Mills,* 171 F.3d at 455-57).

Nance failed to address this problem with his sex discrimination claim in his brief. Nance does not cite to any evidence that suggests Empire Casting was inclined to discriminate against men or treat male employees differently because of their sex. *See Miller*, 2018 WL 905517, at *3. Nor does he assert any direct evidence of sex discrimination. *See Mills v. Health Care Serv. Corp.*, 171 F.3d at 457. Considering the record as a whole, Nance has not made the showing required to state a "reverse discrimination" claim. His sex discrimination claim fails as a matter of law, and Empire Casting is entitled to judgment on this count.

### 3.  Count V: Age Discrimination in Violation of Title VII

Count V alleges that Empire Casting discriminated against Nance on the basis of his age in violation of Title VII. As the Court explained to Nance in its 2018 Opinion, Nance cannot bring an age discrimination claim under Title VII. *See Nance,* 2018 WL

1762440, at *4; 42 U.S.C. § 2000e-2(a)(1); *Khan v. Univ. of Chi. Hosps.*, No. 96C7949, 1997 WL 711421, at *3 (N.D. Ill. Nov. 7, 1997) (granting summary judgment for defendant on plaintiff's age discrimination claim premised on Title VII). However, assuming Nance had properly brought his claim under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(a)(1), the claim still cannot survive summary judgment.

In ADEA discrimination cases, as in Title VII cases, the test is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). For both ADEA and Title VII cases, the *McDonnell Douglas* burden-shifting framework is still a viable means of organizing circumstantial evidence. *See id.* However, Nance's allegations of age discrimination fail under both *Ortiz* and *McDonnell Douglas*. The Court already held that Nance plead himself out of court on his age discrimination claim against the Universal Defendants by stating that at least five of seven allegedly similarly situated people are actually older than 40. *See Nance*, 2018 WL 1762440, at *4; Third Am. Compl. at ¶ 130 n.

20 (describing these individuals as "white males and females over 40 years old"). This problem equally dooms Nance's sex discrimination claim against Empire Casting, yet Nance does not mention it in his summary judgment briefing. There simply are not facts in the record that would permit a reasonable jury to conclude that Nance would have kept his job had he been younger. Thus, Empire Casting is entitled to summary judgment on this count.

### 4. Counts VI and X: Retaliation in Violation of Title VII and ADEA

In Counts VI and X, Nance alleges sex, age, and race-based retaliation in violation of Title VII, the ADEA, and § 1981. The Seventh Circuit generally applies the same *prima facie* requirements to retaliation claims brought under Title VII, Section 1981, and the ADEA. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (describing same requirements for Title VII and Section 1981 retaliation claims), *aff'd,* 553 U.S. 442 (2008); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001) (applying same requirements to ADEA retaliation claim). To establish his retaliation claim, Nance must show: (1) that he engaged in a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Volling v. Kurtz*

*Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (citation omitted).

This Court has already held that Nance met the first two prongs, but not the third, when asserting this claim against the Universal Defendants. *See Nance*, 2018 WL 1762440, at *5. The first two prongs are satisfied because Nance filed an EEOC Charge in April 2016 alleging race, age, and sex-based discrimination, and Defendants terminated him in September 2016. However, Nance still does not suggest a causal link between his EEOC Charge and termination beyond mere timing. And causation requires more than the mere fact that an employer's action happens after an employee's protected activity. *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (citation omitted). Indeed, the undisputed facts show that three months after Nance filed his EEOC Charge, Empire Casting hired him to work on the second season of *Chicago Med*. (DSOF ¶¶ 35, 38.) Nance does not explain why Empire Casting would hire him for season two and then, soon after, retaliate against him for filing an EEOC Charge. Nor does he explain why, if Empire Casting retaliated against him for filing an EEOC Charge, it then went on to hire him as an extra on four filming projects from September 30, 2016, to March 28, 2018. (*Id.* ¶ 61.)

Even viewing the facts in the light most favorable to Nance, there is insufficient evidence to suggest causation in this case.

Accordingly, Empire Casting is entitled to judgment in its favor on Nance's retaliation count.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Empire Casting's Motion for Summary Judgment (Dkt. No. 119) and the Universal Defendants' Motion for Summary Judgment (Dkt. No. 114) are both granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 7/29/2019